It is 22-1187, Helvie v. Jenkins, and Mr. McDermott, you may proceed. May it please the Court. Good morning, Your Honors. My name is Sean McDermott, and I represent the appellant, Jeffrey Helvie, in this matter. I urge the Court, and I respectfully request, that as we move forward, that the Court focus on certain portions of the record, particularly the facts as they're set forth at app. Page 106 and 107, and that sets forth Mr. Helvie's deposition testimony, and it also can be reconciled with the defendant's deposition testimony, which is found at app. Page 83 and 84. In late August of 2018, Mr. Helvie was driving with two passengers and a dog in his white pickup truck. He was coming back from the airport, where he picked up his friend, Danielle Trott. Mr. Helvie was stopped for a minor traffic infraction, and Mr. Helvie's testimony sets forth what happened after that stop. And what happened after that stop is the defendant approached Mr. Helvie. Mr. Helvie had his window down halfway. Mr. Helvie was cooperating with Deputy Jenkins, and Mr. Helvie was attempting to get his insurance information off of the phone. He informed Deputy Jenkins that he had a bad connection, and he was trying to get that information. Mr. Helvie testified in his deposition about how the deputy became very aggressive with him and was asking accusatory questions. Was that improper? Or I should say, were the questions about the white ash and the odor of marijuana, was that a violation of the Constitution? In and of itself, the questions, no. I will qualify that a tiny bit where there's a factual dispute, and that's basically what my whole argument is about, is that there is a factual dispute that should be resolved by a jury and not a court. What fact dispute? At that point, what fact dispute? At that point, Mr. Helvie, and it's a fair inference from his testimony at this point, that he had not been smoking marijuana. Okay, he was innocent, but there's no factual dispute about the constitutional propriety of the questions. Right? The questions may be, no, that's ash for my cigarette, I didn't smoke marijuana, but there is no factual dispute that would allow you to predicate a constitutional violation based on simply the questions. Correct, Your Honor. Got it. We're on the same page. Got it. Mr. Helvie did testify that the demeanor of the questioning was aggressive. There was also testimony in the record that Mr. Helvie has PTSD, he is a war veteran, and Mr. Helvie testified that he was asked, and he was very clear that this was cigarette ash that he had, that he was asked about powder. And the question about powder, the fair inference is, is that he was asking about illegal drugs that were not there in the car. Mr. Helvie then rolled up his window, and according to Mr. Helvie, Deputy Jenkins then, in Mr. Helvie's words, jerked the car open, had his hand on his hip, where Mr. Helvie expected either a gun or a taser to be, and then, at that point, Mr. Helvie leans. Before we get to him leaning, was it unconstitutional for Deputy Jenkins to grab the car door when he's asking questions and Helvie raises the car window? Was that a violation of the Constitution for him to grab the door and hold the door? He's entitled under Pennsylvania MIMS to order him out of the vehicle, correct? That in and of itself is not a constitutional violation. What happens next is the constitutional violation, and that is Deputy Jenkins, who weighs over 300 pounds, and he's... Did you ever refer in your briefs to the weight? To us? I did not. That is on page 84, but I did not mention that in my brief. That is on the record, and Mr. Helvie's testimony is that Deputy Jenkins grabbed him by the back and slammed him on the ground. You may object to him slamming him on the ground and pulling his feet up where he's going to land on his back on the pavement, but he was... Jenkins was entitled under the Constitution under MIMS to remove him from the vehicle at that point, correct? He was resisting being removed from the vehicle, right? The manner in which it was done is unconstitutional. Okay. But the act of removing him from the vehicle, you would agree, was permissible. He did it. He exercised that right under MIMS in an unconstitutional way. He acted too violently in exercising his right that he wasn't allowed to do. Is that your argument? That is my position, Your Honor. Yes. The case that, and I know my opposition mentioned in the brief that it's not a Tenth Circuit case, but the DeVille case that I do cite in my brief, they state, and that is a similar case where a woman in that instance rolled up her window and they said the relationship between the need and the amount of force used has to be reasonable. In the case that you're referring to, DeVille, the officer actually threw him, he had broken the glass, correct? Correct. So he broke the glass. There's glass on the pavement. He not only breaks the window, particularly endangering him with broken glass, but then pulls him out and throws him on the broken glass, right, in the DeVille case that you're relying on? Yes. I think that's a fair reading. No breaking of the window here and he didn't throw him on a broken glass, right? He did not throw him on broken glass, but he did throw him on the pavement. That's a Fifth Circuit case. What's the best Tenth Circuit case that we could look at for the clearly established part of the case? To be very honest, Your Honor, what we did do at the trial level is we asserted that this was just a straightforward Graham v. Conner analysis. So the clearly established law is Graham versus Conner? Graham versus Conner, yes. And you know we've allowed that only in very, very limited circumstances. I was intrigued because it did seem to me there were two Tenth Circuit cases that you didn't cite. I don't believe. One of them is Meacham v. Frazier. And in Meacham, it was the officer removing a recalcitrant motorist from a car. And the woman didn't want to, I don't know if it was a woman or not, but in any event, she refused to get out of the car. They pepper sprayed her or him, physically yanked him out, dropped him on the ground, and the court there said that the Tenth Circuit said that the force was justified. And then we have the second case, which is Davis v. Clifford, again a Tenth Circuit case, again a forceful removal of a motorist from a car. And the Tenth Circuit said that the force was excessive. Once again, they yanked him out, or she, this is the woman, the other was a man driver, they yanked her out, and when she didn't leave, where they shattered the glass on the window, they pulled her by the hair, pulled her out of the car, and yanked her to the ground. And in that case, we said that it was excessive. Why didn't you cite those two cases? It's not going to help you very much, because what those two cases suggest is the law isn't clearly established, because we have two cases in the Tenth Circuit involving the forceful removal of recalcitrant drivers from cars. One said it was excessive, one said it wasn't. Your Honor, the focus of our argument... Did you think about those two cases? Did you look at them and say, ah, the Tenth Circuit doesn't need to know about them? To be very honest, Your Honor, I don't believe I did. I wouldn't just not cite something or not attempt to distinguish it. I started with the Graham analysis, having not found what I wanted to find at the trial level. When we did brief, I located the DeVille case that I mentioned, and I thought that was the closest. And where we are coming from under the Graham analysis is that... We have drugs and firearms in the mix. Pardon me? We have a belief that there are drugs in the vehicle, and the officer's testimony is that he saw a firearm. So you throw that into the mix. How do we evaluate the objective reasonableness of the officer's use of force? We presented in the focus... In those circumstances? The focus on the trial level was that the officer in this case... And I don't like to say these things, but in the age of body cameras, we are seeing what does actually happen. And Mr. Helvey and Ms. Trott were very clear that this did not occur the way that Deputy Jenkins said it occurred. He went in, he got Mr. Helvey out of there immediately, he slammed him to the ground, he brought him to the back of the truck, and then he gave him a knee drop and broke his ribs. I don't want to interrupt your train of thought, but I just want to make sure, on dropping the knee to the ribs, I didn't see anything in your appeal brief, your opening brief, where you had argued that that was excessive. Your argument has its end point prior to that point, removal to the back of the vehicle, right? Well, I view it all part and parcel as the same thing, Your Honor. It's not a de minimis injury, it's the knee drop that breaks the ribs. So this whole event is a Fourth Amendment excessive force violation. And we can talk about when the violation of the Fourth Amendment actually begins, but when he's brought out of the car and then the injury, the knee drop is what caused the injury in this case. So that is part of the excessive force in this case. And the other thing I do want to... Does your argument turn on a fact dispute between Mr. Helvey and Mr. Jenkins on whether the gun had been spotted when he was removing him from the car? That's pure, that's my entire argument, Your Honor. If we conclude that there's no disputed fact that he saw the gun, we're done? I will direct the court's attention to page 83. And that is the defendant's deposition. And his words in the deposition are, from that point, I grabbed him, meaning Mr. Helvey, and he says, and then I grabbed his leg and pulled him out. And then he had, when he landed on his back, he was face up. And that's when I saw there was a handgun in the door pocket, like the pocket of the door. And that's different than what is cited in the response brief and what was put in the material facts recitation at the trial level. And that can be reconciled with what Mr. Helvey described. And my whole point is that the gun was not an issue. It was something that Deputy Jenkins clinged to after he committed this Fourth Amendment violation. And there's ample evidence in the record to show that there is a factual dispute that a jury should decide. The fact that there's a gun in there, it's a tough case for me at trial. And it should be a tough case for a jury. It should not be a tough case for this court, though, because it's a credibility determination. And that is the province of the jury. And if you accept the facts that we have alleged them, there's not a violation of prong two of the Graham factors. How could Helvey even make a statement about what Jenkins saw or didn't see? I think, well, the fact that he... I mean, the gun was there. How does he even have the... How does he even have a standing to say what Helvey did or didn't, what Jenkins did or didn't see? I think it's a very fair inference that he's there and he says, Deputy Jenkins pulled me out of the car by my feet. He called for backup. He didn't mention anything about a gun. The other witness, Ms. Trott, says, the deputy never mentioned anything about a gun. And then he proceeds to drag Mr. Helvey to the back of the truck. There are passengers in this car. Is it really believable that a trained officer is going to leave a firearm unattended and go and drag this person? What else is he going to do? I mean, there's only one of him, but he's only got two hands. He apparently called for backup. And a backup would be there. And, Your Honor, your point is not... I'm not dismissive of it. And you have a very good point. My ultimate point is those are questions for a jury. Fair enough. Go ahead. Can I just... I just really wanted to follow up with Judge Timpkins' question. You clearly are arguing strenuously that there is a tribal issue of fact on whether or not Jenkins saw the gun. I think his question, Judge Timpkins' question was, well, if... Because when you said that that's not only an argument, that is the whole argument, and then that lends itself to the question, if we reject your position that it's a genuine issue of material fact on whether Jenkins saw the gun, are we compelled to affirm? And I apologize, Your Honor. I just want to make sure that I... Well, I'm just saying, you know, when you said that, I think, that that was not only an argument, that was the whole argument, that's what I thought you had said. So I just wonder, well, so is that sort of the linchpin? Do we decide that? And if we agree with you, then we reverse. If we disagree with you, then we affirm. And I want to answer your question directly, and I really hope I am. Okay. With the passage that I read regarding Deputy Jenkins' testimony, I think there's a fair inference there that the gun is seen inside the truck after Mr. Helvey has already been, for lack of a better term, just put down. He's not a threat at that point to anyone. And so I believe that under either scenario, this is a jury question, and a jury should be evaluating the Graham v. Conner factors. Did I answer that sufficiently, Your Honor? Yes. Yes. Thank you. Thank you, counsel. All right. Thank you, Your Honor. Let's hear from Mr. Jenkins. Good morning. May it please the Court, my name is Michael Sink. I represent the Adams County Sheriff's Deputy, Mr. Jenkins. In the City of Escondido v. Immins, the Supreme Court reminded courts and parties that it is important in The Court reminds us that we must ask whether clearly established law prohibits the officers from stopping and taking down a man in the particular circumstances confronted by the officer. In Luna, the Supreme Court doubled down on that assessment, especially in Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Both below and now on appeal, Mr. Helvey's principal argument has been an appeal, at least to the facial applicability of the Graham factors. His argument below consisted of a mere few sentences, and the District Court correctly assessed that most of his challenges did not go to the undisputed facts of the case. If Officer Jenkins didn't see the gun until after he had dragged Helvey out of the truck, might there be a trialable issue on excessive force at that point? Before the ribs are broken. On prong one of the qualified immunity assessment, Your Honor, perhaps. On prong two, no. Even if one sets aside the presence of marijuana observable to Deputy J. Jenkins, as the District Court did, the District Court was still able to assess that his investigative stop was proportionate to inquiring as to his consumption of drugs or alcohol. Why does, I don't understand how the marijuana becomes very relevant, because even if there was marijuana smell in the car, that doesn't connect it necessarily to the driver. It doesn't, Your Honor, other than that at this point in an investigative stop and a Terry stop where the officer has observed and the. And marijuana is legal in Colorado. It doesn't mean driving under the influence of marijuana. But nobody is suggesting, I mean, I guess they suggest that he had minor traffic violations, but not to the level that would rise to any charge of driving while impaired. He was charged with driving while impaired. There is a dispute as to whether he was in fact impaired, and at summary judgment, the District Court took Mr. Helvey's view that he had not smoked that day or the day prior as true for purposes of summary judgment. But from Deputy Jenkins' perspective, as he approaches a car that has been admittedly driven in excess of the speed limit and erratically, and he detects the odor of marijuana, there's no dispute about that portion. The dispute is whether the marijuana was burnt or not, that he goes to the vehicle and he's allowed to ask investigative questions regarding the state of the driver's impairment. And that is what he begins to do. Let's say that he sees the gun. Let's say that he, we credit your point, that he smelled burnt marijuana. Jenkins' testimony was that he therefore, that's the reason that he dragged him to the back of the vehicle, right? So the entire, so at the point that he drops the knee, both to his chest and then to his back, those take place at the back of the vehicle. He no longer has access to the driver's seat, so he can't take off and continue to drive, nor can he access the gun on the pocket side, right? At least if we view the evidence in white favorable to the plaintiff. He's after all prone, laying on his tummy at the back of the vehicle, right? There is a lack of precision in the record below as to exactly where, between the door of the vehicle and the back of the truck, the knee strike was delivered. But he's the plaintiff. And he's the non-movement. We view the evidence in the white most favorable to the non-movement. And his account was that he was at the back of the vehicle, and in fact I think even Jenkins testified that that's why he dragged him to the back of the vehicle was to remove him from access because he had seen the gun. He's trying to disable him from accessing the gun that he had seen in the pocket of the driver's side. It is correct that Deputy Jenkins testifies that is the motivation for his decision to move Mr. Helvey from the side of the truck to the back of the truck. The position that Mr. Helvey is in when he comes out of the truck is being hung up by a foot. And he testifies at that point in time, this is Mr. Helvey's own testimony in the record, that he is struggling with his arms, so that the deputy does not have control of his arms. And he moves him. He doesn't say he is drug at that point in time. He moves him. He moves him. The back of the vehicle. It doesn't specify. He does. I believe Mr. Helvey in his deposition testimony does not specify precisely where he was relative to the door when the knee strike was delivered. By the time they get to the back of the vehicle, Deputy Jenkins puts him on the ground and attempts to put him under a leg lock in order to free his hands. At that point in time, Mr. Helvey testifies that his arms wouldn't unlock. And there is a little bit of a struggle before his arms unlock and then Deputy Jenkins is able to put him into custody. So my question is, let's say we credit all of that. Viewing the evidence and the like, most favorable to the non-movement, he is arguably, at least for summary judgment purposes, far enough removed from the driver's side that he cannot access the gun. He certainly can't access the ignition to get back into the vehicle and drive away under the influence of marijuana. He has a knee to the back, according to the evidence that is presented by the non-movement. And a state of Booker specifically says that when the suspect, although his hands are free, he's on his tummy with a man on his back, whether he's 150 pounds or 300 pounds. So why can't we view that as a tribal issue of fact about whether he had a knee to the back and he, although his hands were unrestrained, that he was under control. And if that is true, there is no legitimate penalogical reason to put a knee to the back under a state of Booker, and that is a precedent that would make this a clearly established violation of his constitutional rights. Respectfully, that is not Mr. Helvey's deposition testimony below. Mr. Helvey's deposition testimony below is that he is pulled out of the vehicle and is hanging by his legs. His arms are unrestrained. It is not definitively established that he is pinned and unmoved until he is at the back of the vehicle, at which time Deputy Jenkins is pinned. Neither of these factual scenarios were outlined in detail below to get the argumentative position in front of the district court as to where he was actually restrained. Now, what Mr. Helvey argues, what he does argue is that he wasn't resisting, that he was just flailing about trying to get his balance, trying to support his own weight, but he does not contest that his arms were unconstrained and that he was attempting to alter his body position relative to Deputy Jenkins, who did not have full control over him as he removed him from the truck. In this particular case, what Deputy Jenkins did was incrementally and proportionally respond to the situation in front of him. He had a driver who he suspected reasonably of driving under the impairment of either drugs or alcohol. He had passengers in the vehicle. He had the ability to restart the vehicle with the push of a button, and when he approached the vehicle after initial discussion with the driver, he noted and observed white ash. When asking Mr. Helvey, the driver, about that white ash, Mr. Helvey did not explain what the white ash. He denied its existence. He said, what white ash? At that point in time, Deputy Jenkins asked Mr. Helvey to exit the car or to answer additional questions. Mr. Helvey refuses to do so. At that point in time, the Deputy Jenkins also offers him to submit to a blood or alcohol test. He refuses to do so. He then opens the door, and upon opening the door, he then instructs him not once but twice to exit the vehicle. Mr. Helvey refuses to do so. He then attempts to lay his hand on his arm to pull him out of the vehicle. Mr. Helvey leans into the vehicle by his own testimony for the express purpose of escaping being pulled out of the vehicle. When that happens, his own leg comes out through no fault of Deputy Jenkins, and Deputy Jenkins seizes the opportunity to remove him from the vehicle by his leg. At that point in time, Deputy Jenkins testifies he saw a gun, and in any event, Mr. Helvey's arms were still unconstrained, and he was attempting to move in such a way that Mr. Deputy Jenkins could not bring him into handcuffs. Because he saw the handgun at that point in time, he removes him to the back of the vehicle far enough away from the driver's arms where he can then apply a pin and handcuff him. At that point in time, no further force is used, and he is provided medical treatment. This, Deputy Jenkins submits, is a proportionate escalation based on the facts and circumstances confronting him, and there was no clearly established law, certainly none presented at the district court, where the plaintiff bears the burden of establishing that, that his conduct was clearly unconstitutional. Let's talk about clearly established law for a minute. Did you consider the two Tenth Circuit cases I cited to the appellant, Meacham v. Fraser and Davis v. Clifford? I have considered them, Your Honor. You what? I have considered them, Your Honor. You have? Yes, Your Honor. And what is your view about whether they relate to whether the law is clearly established? I think Meacham v. Fraser is far more factually analogous, and in both cases, it seems to be there is some additional force being applied here in the form of broken glass that's not even present in this case. But Meacham is closer to the facts and circumstances of this case. In Davis v. Clifford, the officers create a scenario where the driver was reasonably in fear for her safety. The car had been surrounded. There were multiple officers on scene. The officers approached the vehicle and beat the vehicle with their batons. At that point in the time, the driver reasonably rolls, cracks her window. She's not refusing a conversation or trying to block investigative inquiry and simply asks for assurances that she'll be safe, at that point in time, the officers break the window, creating the risk of glass, and then do not use that opportunity to open the door, but grab the driver by her hair and pull her through the broken window. Now, those facts and circumstances are far more severe and far less justifiable than the case here, where Deputy Jenkins acted incrementally and proportionally to Mr. Helvey's volitional choices to attempt to avoid providing information in response to an appropriate investigatory stop. The situation could have gone much more smoothly and much more quickly if Mr. Helvey had simply cooperated earlier with the police officer and provided information to allay the deputy's reasonable suspicions. Deputy Jenkins urges that the court affirm the award of qualified immunity because Mr. Helvey has not established that his burden on summary judgment that he had violated clearly established constitutional law. Unless your honors have other questions, thank you. Thank you, counsel. You are excused. Case is submitted.